UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| URBAN AERONAUTICS LIMITED<br>10 NAHAL SNIR STREET<br>YAVNE 81224, ISRAEL<br>　　　　　　　　Plaintiff<br>　　v.<br><br>SHENZHEN DJI SCIENCES AND<br>　　TECHNOLOGIES LTD<br>DJI SKY CITY<br>NO. 55, XIANYUAN ROAD HQ<br>NANSHAN DISTRICT<br>SHENZHEN, CHINA, 518057<br><br>　　　　　　　　Defendant | Civil Action No.:<br><br>2:24-cv-903 |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Urban Aeronautics Limited (UAL), by its undersigned counsel, alleges as follows for its Complaint against Defendant Shenzhen DJI Sciences and Technologies Ltd (DJI) as follows.

### THE NATURE OF THIS ACTION

1.      UAL brings this action against DJI pursuant to 35 U.S.C. §101 et. seq. and §§271, 281, 283, 284, & 285 inclusive, for infringement of one or more claims of U.S. Patent No. 7,946,528 entitled "FLIGHT CONTROL SYSTEM  ESPECIALLY SUITED FOR VTOL VEHICLES," the "Patent-In -Suit."

### THE PARTIES

2.      Plaintiff is an Israeli Corporation having an address located at 10 Nahal Snir Street, Yavne 81224, Israel.  Plaintiff is the owner of the 7,946,528 Patent-in-Suit.

3. Defendant DJI is headquartered in Shenzhen, China at DJI Sky City, No. 55, Xianyuan Road HQ and has offices at 14th Floor, West Wing, Skyworth Semiconductor Design Building, No.18 Gaoxin South 4th Ave, Nanshan District, Shenzhen, China, 518057.  DJI imports and sells the accused products directly into the United States and also through its corporate owned offices and wholly owned subsidiaries in the United States, located at 685 Fifth Avenue, New York, New York 10022; at 201 South Victory Boulevard, Burbank, CA 91502; and at 17301 Edwards Road, Cerritos California. DJI operates in the United States under a number of names, including:  DJI Technology, Inc,; DJI Creative Studio, LLC; DJI Service, LLC; DJI  Research, LLC; DJI Industrial, Inc. and DJI Inc.  DJI products can be purchased at numerous retailers throughout the United States, including in the Eastern District of Texas. Defendant  makes, uses, offers to sell, sells, supplies and services the accused products throughout the United States, including in this district.  The accused products infringe the claims of the '528 Patent-in-Suit and when used, practice the method claims of  the Patent-in-Suit.

**JURISDICTION AND VENUE**

4. This is an action for patent infringement arising under the laws of the United States, 35 U.S.C. §271 et seq.

5. This Court has subject matter jurisdiction over this action pursuant to 35 U.S.C. §§271, 281 and 28 U.S.C. §§1331 and 1338(a), federal question.

6. This Court has personal jurisdiction over Defendant DJI because it has supplied its products into this district and under the Federal Long Arm Rule, FRCP 4(k)(2).

7. Venue is proper in this Court against Defendant DJI under 28 U.S.C. § 1391 (c)(3) and 28 U.S.C. § 1400(b)  based on information set forth herein, which is hereby repeated and incorporated by reference. For purposes of venue regarding cases against foreign

corporations, general federal statutes are applicable. This Court is a proper venue for a case against Defendant DJI, a foreign corporation, in any judicial district in any state to which it is subject to personal jurisdiction. *See Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.,* 406 U.S. 706, 92 S. Ct. 1936, 32 L. Ed. 2d 428 (1972); *See also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 137 S. Ct. 1514, 197 L. Ed. 2d 816 (2017) (Declining to expand limitation of venue statutes related to domestic corporations to foreign corporations).

### BACKGROUND AND GENERAL ALLEGATIONS

8. UAL is the current owner and assignee of the patent-in-suit.

9. Defendant DJI makes, uses, offers for sale, sells, provides, distributes, licenses, supplies, and services DJI Drones, including the DJI Matrice, Matrice 300, Matrice 30, Matrice 350, FlyCart 30 and numerous other high-end drones with Three Propeller Emergency Landing (TPEL) capabilities, which infringe the claims of the Patents-in-Suit. These are the accused products currently known to Plaintiff. other products may be identified through discovery. Itis also anticipated that new drones will be introduced and anticipated that the infringing feature will be added to other existing drones.

10. The accused DJI Drones infringe claims 1-5, 9-14 and 18 of the '528 Patent;

11. On May 24, 2011, United States Patent No. 7,946,528, was duly and legally issued by the United States Patent and Trademark Office ("USPTO"). The '528 Patent claims patent-eligible subject matter and is valid and enforceable. UAL is the exclusive owner of all rights, title, and interest in the '528 Patent, including the right to bring this suit for injunction and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '528 Patent. Defendant is not licensed to the '528 Patent, either expressly or

implicitly, nor does it enjoy or benefit from any rights in or to the '528 Patent whatsoever. A true and correct copy of the '528 Patent is attached hereto as **Exhibit A**.

12. The '528 Patent is presumed valid under 35 U.S.C. § 282.

13. The claims of the '528 Patent are directed to "An aircraft flight control system having plural control subsystems with redundancies" and to "A method for providing aircraft flight control utilizing plural control subsystems with redundancies." Claim 1 of the '528 Patent recites:

> 1. An aircraft flight control system having plural control subsystems with redundancies organized so as to provide continued but degraded control power over critical aircraft flight operating parameters even if any one complete control subsystem catastrophically fails, said system comprising:
> 
> a plurality of pilot controlled input sensors associated with each of a plurality of degrees of freedom in aircraft flight movement;
> 
> a plurality of aircraft flight control actuators associated with each of the plurality of degrees of freedom in aircraft flight movement;
> 
> a plurality of aircraft flight state sensors associated with each of a plurality of aircraft flight state conditions including at least altitude and speed;
> 
> the plural control subsystems, each having at least one control computer subsystem connected to (a) receive inputs from at least one of said pilot controlled input sensors for each of said plurality of degrees of freedom, (b) receive inputs from at least one of said flight state sensors for each of said plurality of aircraft flight conditions, and (c) provide outputs to at least one of said flight control actuators associated with each of said plural degrees of freedom:
> 
> said inputs and outputs to the control computer subsystem of each of said plural control subsystems being selected such that a catastrophic and complete failure of any one of said plural control subsystems causes continued control power over critical aircraft flight parameters by remaining unfailed ones of said plural control subsystems, degraded to less than 100% of total available control power, but sufficient to permit controlled aircraft descent to a landing.

**INFRINGEMENT**

14. Defendant manufactures, uses, offers for sale, sells, provides, distributes, licenses, supplies, and services DJI Drones which include control subsystems with redundancies organized so as to provide continued but degraded control power over critical aircraft flight

operating parameters even if any one complete control subsystem catastrophically fails. The accused DJI products infringe claims of the Patent-in-Suit.

15. Defendant has, under 35 U.S.C. §271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '528 Patent, by manufacturing, using, offering for sale, selling, providing, distributing, licensing, suppling, servicing and/or importing into the United States, Defendant's Accused Products.

16. Defendant also indirectly infringes the '528 Patent by actively inducing the direct infringement by third parties under 35 U.S.C. §271(b). Defendant has knowingly and intentionally actively induced others to directly infringe at least one claim of the '528 Patent by providing accused devices which are "used" and by providing instruction for customers to use to provide aircraft flight control to devices throughout the United States. Defendant continues to induce infringement of the '528 Patent.

17. Defendant has contributorily infringed and continues to contributorily infringe under 35 U.S.C. §271(c) because, with knowledge of the '528 Patent, Defendant supplies material parts of infringing systems, where the material parts are not a staple article of commerce, and is incapable of substantial noninfringing use. Defendant contributes to its customers' infringement because, with knowledge of the '528 Patent, Defendant supplies the technology that allows its customers to infringe the patent. Defendant also indirectly infringes under 271(c) by servicing drones through replacement of infringing components which extend beyond repair.

18. Defendant has, under 35 U.S.C. §271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '528 Patent, by practicing the claimed method of providing control subsystems with

redundancies organized so as to provide continued but degraded control power over critical aircraft flight operating parameters even if any one complete control subsystem catastrophically fails.

19. Defendant has contributorily infringed and continues to contributorily infringe under 35 U.S.C. §271(c) because, with knowledge of the '528 Patent, Defendant supplies material parts of infringing systems, where the material part is not a staple article of commerce, and is incapable of substantial noninfringing use. Defendant contributes to its distributor's, retailer's, independent distributor's and independent retailer's and customers' infringement because, with knowledge of the '528 Patent, Defendant supplies the parts and technology that allows its customers to infringe the patent by practicing the claimed method of providing components of an infringing device.

20. Plaintiff has conducted a detailed analysis, establishing and confirming that Defendant's Accused Products directly infringe, and that Defendant contributes to and induces infringement when Defendant supplies parts and when, according to Defendant's instructions for operation, the accused products are used to directly infringe claims of the Patent-in-Suit.

21. Recited below is an example demonstrating the correspondence of the operation of the accused products with elements of an exemplary claim of the '528 Patent. Demonstrating that the accused products satisfy the elements of the asserted claims, shown below as an example of the DJI Matrice compared to exemplary claim 1 of the '528 Patent:

|   | Element | Corresponding Structure in Matrice 300 RTK |
|---|---|---|
| 1.1 | An aircraft flight control system having plural control subsystems with redundancies organized so as to provide continued but degraded control power over critical aircraft flight operating parameters even if any one complete control subsystem catastrophically fails, said system comprising: | **Product Profile**<br><br>Introduction<br><br>The MATRICE™ 300 RTK (M300 RTK) is a powerful industrial drone platform with an advanced flight controller system, 6 Directional Sensing and Positioning system and FPV camera. To enhance reliability and safety, it also supports CSM Radar - an additional obstacle detection component that can be mounted on top of the drone. It features several advanced flight functions including 6 directional sensing and positioning, AI spot-check [1], Smart Track [2], PinPoint [2], Location Sharing [2], Primary Flight Display and more. The built-in AirSense provides awareness of nearby aircraft within the surrounding airspace to ensure safety.<br><br>*(Source: M300 RTK User Manual v4.0 @ p. 7.)*<br><br>**Matrice 300 RTK Redundant Systems Report**<br><br>The Matrice 300 RTK platform is designed with extensive system and sensor redundancies to maximize flight safety and reliability. These redundancies and safety mechanisms include: dual flight control system sensors, dual control signal links, dual intelligent batteries, dual transmission links, obstacle sensor system redundancies, and three-propeller emergency landing.<br><br>*(Source: Matrice 300 RTK Redundant Systems Report @ p. 1.)*<br><br><br><br>**Three-Propeller Emergency Landing of the Matrice 300 RTK**<br><br>1. General Introduction of Three-Propeller Emergency Landing Function<br>Historically, quadcopter-style drones have had an Achille's Heel: Should one motor fail, the entire UAS will become uncontrollable and unable to sustain flight. DJI has remedied this with an innovative solution designed for the Matrice 300 RTK (M300 RTK).<br><br>Should a single motor fail, the M300 RTK will automatically enter the Three-Propeller Emergency Landing mode. In this mode, the aircraft will re-establish stability before starting a controlled descent to land. This function provides a window for the user to land the aircraft in a suitable location and reduce potential damage to the UAS and third parties.<br><br>*(Source: DJI Three-Propeller Emergency Landing White Paper @ p. 1; See also: M300 RTK User Manual v4.0 @ p. 101.)*<br><br>**Aircraft behavior:** The aircraft will automatically descend at a constant vertical speed of 5m/s and respond to some stick movements in this phase. The aircraft will keep spinning during descent, with a horizontal drift speed of ≤1.5 m/s.<br><br>**How to operate the aircraft:** In this phase, control stick functionality will adjust. The stick that controls back and forth movement will be adjusted to control North-South (cardinal direction) movement, and the stick used to control the left and right movement will be adjusted to control East-West movement. Pushing up the throttle stick can stop the automatic descent of the aircraft and even make the aircraft ascend slowly (max. 1.25m/s). Pushing the throttle stick down will not change the default descent of 5m/s. The aircraft will keep spinning quickly and will not respond to the yaw stick movements.<br><br>*(Source: DJI Three-Propeller Emergency Landing White Paper @ p. 2.)* |
| 1.2 | a plurality of pilot controlled input sensors associated with | The M300 includes pilot input sensors in in the form of pitch, roll, yaw, and throttle sticks.<br>*(See, e.g., M300 RTK User Manual v4.0 @ pp. 47-48 and DJI Three-Propeller Emergency Landing White Paper @ p. 3.)* |

| | Element | Corresponding Structure in Matrice 300 RTK |
|---|---|---|
| | each of a plurality of degrees of freedom in aircraft flight movement; | |
| 1.3 | a plurality of aircraft flight control actuators associated with each of the plurality of degrees of freedom in aircraft flight movement; | Actuators are <u>associated with each of the plurality of degrees of freedom in aircraft flight movement</u> including, for example, by affecting the pitch, yaw, and roll of the aircraft by varying the speed of the motors and propellers.<br>*(See, e.g., M300 RTK User Manual v4.0 @ pp. 47-48)* |
| 1.4 | a plurality of aircraft flight state sensors associated with each of a plurality of aircraft flight state conditions including at least altitude and speed; | ![Navigation Display showing MATRICE 300 RTK User Manual with indicators including SPD 10.0 m/s and ALT 130.2 m, 1126.6 ASL, with red arrows pointing to speed and altitude readings]<br>*(Source: M300 RTK User Manual v4.0 @ p. 69.)*<br>The Matrice 300 User Manual also contains multiple passages indicating that the altitude and speed are constantly being measured or sensed in order to keep the aircraft flying within pre-defined flight parameters.<br>*(See, e.g., M300 RTK User Manual v4.0 @ pp. 15, 22-27, 41, 49, 66, 67-69, 78, 86, 94.)* |
| 1.5 | the plural control subsystems, each having at least one | For example, the Matrice 300 includes multiple modules that include firmware to control the aircraft.<br>*(See, e.g., Source: M300 RTK User Manual v4.0 @ p. 66, 72, 90.)*<br><br>On information and belief, each of the plural subsystems is |

|  | Element | Corresponding Structure in Matrice 300 RTK |
|---|---|---|
|  | control computer subsystem connected to: | connected to one of the four motors of the Matrice 300 aircraft and to associated input sensors (IMU, Vision Sensor, e.g.). Each subsystem is connected to some but not all pilot input sensors. As explained in the Three-Propeller mode documentation, when a single subsystem fails, there are three remaining subsystems which control the various degrees of freedom of movement of the drone when entering the "Three-Propeller function." *(See, e.g., DJI Three-Propeller Emergency Landing White Paper @ pp. 2-3)* |
| 1.5.a | (a) receive inputs from at least one of said pilot controlled input sensors for each of said plurality of degrees of freedom, | For example, each of the subsystems receives input from the control sticks for pitch, roll, and yaw. *(See, e.g., M300 RTK User Manual v4.0 @ pp. 47-48 and DJI Three-Propeller Emergency Landing White Paper @ p. 3.)* |
| 1.5.b | (b) receive inputs from at least one of said flight state sensors for each of said plurality of aircraft flight conditions, and | The "plurality of aircraft flight conditions" include at least altitude and velocity. The control computer subsystems receive inputs from at least one sensor for these conditions while in normal flight (e.g., to maintain and/or report altitude or velocity) and while in the three-propellor mode (e.g., to limit direction, velocity, altitude, and descent speed). *(See, e.g., DJI Three-Propeller Emergency Landing White Paper @ pp. 2-3.)* |
| 1.5.c | (c) provide outputs to at least one of said flight control actuators associated with each of said plural degrees of freedom; | The plurality of control computer subsystems provide output to the motors and ESC (Electronic Speed Controllers) which control altitude, speed (pitch), descent velocity, roll, and yaw. *(See, e.g., M300 RTK User Manual v4.0 @ pp. 47-48 and DJI Three-Propeller Emergency Landing White Paper @ p. 3.)* |
| 1.6 | said inputs and outputs to the | The Three-Propeller mode documentation explains that in the event of failure of one control subsystem (e.g., failure of one motor), the |

Case 2:24-cv-00903-JRG    Document 1    Filed 11/06/24    Page 10 of 15 PageID #: 10

| Element | Corresponding Structure in Matrice 300 RTK |
|---|---|
| control computer subsystem of each of said plural control subsystems being selected such that a catastrophic and complete failure of any one of said plural control subsystems causes continued control power over critical aircraft flight parameters by remaining unfailed ones of said plural control subsystems, degraded to less than 100% of total available control power, but sufficient to permit controlled aircraft descent to a landing. | remaining subsystems are capable of operating the remaining unfailed subsystems.<br><br>**3. Trigger Condition**<br>The M300 RTK's flight controller continuously monitors all four motors during flight. When the controller detects a propulsion system malfunction – either a motor or ESC malfunction that is causing a motor to operate at lower than the required speed – the issue will trigger the Three-Propeller Emergency Landing mode.<br><br>(See, e.g., *M300 RTK User Manual v4.0* @ pp. 47-48 and *DJI Three-Propeller Emergency Landing White Paper* @ pp. 1-3.)<br>In this mode, the power is <u>degraded to less than 100% of total available control power, but sufficient to permit controlled aircraft descent to a landing.</u><br>The documentation indicates that limited control of roll and pitch is still available, as is some degree of control over velocity and descent speed. This is sufficient to permit a controlled descent.<br><br><br>**Three-Propeller Emergency Landing of the Matrice 300 RTK**<br><br>1. General Introduction of Three-Propeller Emergency Landing Function<br>Historically, quadcopter-style drones have had an Achille's Heel: Should one motor fail, the entire UAS will become uncontrollable and unable to sustain flight. DJI has remedied this with an innovative solution designed for the Matrice 300 RTK (M300 RTK).<br><br>Should a single motor fail, the M300 RTK will automatically enter the Three-Propeller Emergency Landing mode. In this mode, the aircraft will re-establish stability before starting a controlled descent to land. This function provides a window for the user to land the aircraft in a suitable location and reduce potential damage to the UAS and third parties.<br><br>c) Three-Propeller Descending Phase<br>After the aircraft has achieved relative stability, it will enter the Three-Propeller Descending Phase.<br><br>RC and App behavior: The RC will beep continuously. The following notification will be displayed in DJI Pilot: "Aircraft propulsion system error. Forced landing. Manually control the aircraft and land in an open area".<br><br>Aircraft behavior: The aircraft will automatically descend at a constant vertical speed of 5m/s and respond to some stick movements in this phase. The aircraft will keep spinning during descent, with a horizontal drift speed of ≤1.5 m/s.<br><br>How to operate the aircraft: In this phase, control stick functionality will adjust. The stick that controls back and forth movement will be adjusted to control North-South (cardinal direction) movement, and the stick used to control the left and right movement will be adjusted to control East-West movement. Pushing up the throttle stick can stop the automatic descent of the aircraft and even make the aircraft ascend slowly (max. 1.25m/s). Pushing the throttle stick down will not change the default descent of 5m/s. The aircraft will keep spinning quickly and will not respond to the yaw stick movements.<br><br>(Source: *DJI Three-Propeller Emergency Landing White Paper* @ pp. 1-3.) |

22.     Defendant has infringed, and continues to infringe, at least claims 1-5, 9-14 and 18 of the '528 Patent (the asserted claims) under 35 U.S.C. § 271(a)(b) and/or (c), by (a) making,

-10-

using, distributing offering to sell, selling and/or importing into the United States, systems, and methods that infringe the asserted claims and by performing the claimed methods in the United States, (b) by inducing others to use the accused products and/or sell the accused products and to perform the claimed methods in the United States, (c) by contributing to the infringement of others and by selling components of the patented systems and (b & c) by selling a product for performing the patented process. Defendant continues to manufacture, use, offer to sell, sell and import accused products. The accused products are also being used to infringe. Defendant continues to sell accused products inducing and contributing to infringement by others and also continues to perform infringing activity by performing the claimed method in the United States.

23. By engaging in accused activity including making, using, distributing, offering to sell, selling and importing accused products in the United States, defendant continues to infringe the asserted claims.

24. Upon information and belief, Defendant has directly infringed one or more of the asserted claims under 35 USC §271(a):

> "(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

by engaging in accused activity including making, using, distributing, offering to sell, selling and importing accused products in the United States. Defendant continues to infringe the asserted claims.

25. Upon information and belief, Defendant has indirectly infringed one or more of the asserted claims under 35 USC §271(b):

> (b) Whoever actively induces infringement of a patent shall be liable as an infringer.

by providing accused products which used which is an act of infringement and by providing instructions, which are used to provide infringing flight control to an aircraft as an infringement of the method claim according to the instructions and thereby inducing others to infringe the method claims by practicing the method.

26. Upon information and belief, Defendant has indirectly infringed one or more of the asserted claims under 35 USC §271(c):

> (c) Whoever offers to sell or sells within the United States or imports into the United States . . . or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

by providing accused products, and other components and supplies, which are combined to form an infringing system and/or used in practicing methods to provide flight control which infringe the asserted claims, thus contributing to the infringement of the asserted claims .

27. Defendant does not have a license or authority to use the asserted claims .

28. As a result of Defendant's infringement of the asserted claims, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

**COUNT I**
**DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,946,528**

29. The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

30. Defendant has directly infringed, and continues to directly infringe, at least claims 1-5, 9-14 and 18 of the '528 Patent, under 35 U.S.C. § 271(a), by making, using, offering to sell, selling and importing the Accused Products in the United States.

31. Defendant does not have a license or authority to use the '528 Patent.

32. As a result of DJI's infringement of the '528 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

## COUNT II
### INDIRECT INDUCED INFRINGEMENT OF U.S. PATENT NO. 7,946,528

33. The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

34. Upon information and belief, Defendant has indirectly infringed one or more of the claims of the '528 Patent under 35 USC §271(b) by providing accused products with instructions, to practice the patented method claims of the '528 Patent according to the instructions and in addition to use the patented systems of the other claims thereby inducing others to use the products in an infringing manner.

35. Defendant does not have a license or authority to use the '528 Patent.

36. As a result of DJI's infringement of the '528 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

## COUNT III
### INDIRECT CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NO. 7,946,528

37. The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

38. Upon information and belief, Defendant has indirectly infringed one or more of the claims of the '528 Patent under 35 USC §271(c) by providing accused products, and components and supplies, which are used as components of infringing systems which infringe the claims of the '528 Patent, thus contributing to the infringement of the '528 Patent.

39. Upon information and belief, Defendant DJI has indirectly infringed one or more of the claims of the '528 Patent under 35 USC §271(c) by providing accused products, and components and supplies, which are used as components of infringing systems which are used to practice methods which infringe method claims of the '528 Patent, thus contributing to the infringement of the '528 Patent.

40. Defendant does not have a license or authority to use the '528 Patent.

41. As a result of DJI's infringement of the '528 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

## PRAYER FOR RELIEF

A. For a Judgment declaring that Defendant has infringed one or more claims of the Patent-in-Suit.

B. For a grant of a permanent injunction pursuant to 35 U.S.C. §283, enjoining the Defendant from further acts of infringement;

C. For a judgment awarding Plaintiff compensatory damages as a result of Defendant's infringement sufficient to reasonably and entirely compensate Plaintiff for infringement of the '528 Patent in an amount to be determined;

E. For a judgement and order awarding a compulsory ongoing royalty;

F.	For a judgment declaring that this case is exceptional and awarding Plaintiff its expenses, costs and attorneys' fees in accordance with 35 U.S.C. §285 and Rule 54(d) of the Federal Rules of Civil Procedure;

G.	For a judgment awarding Plaintiff prejudgment interest pursuant to 35 U.S.C. §284, and a further award of post judgment interest, pursuant to 28 U.S.C. §1961, continuing until such judgment is paid; and.

H.	For a judgment awarding Plaintiff enhanced damages under 35 U.S.C. §284; and

L.	For such other relief to which Plaintiff is entitled under the applicable United States laws and regulations or as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to the Federal Rules of Civil Procedure Rule 38(b), Plaintiff hereby demands trial by jury as to all claims in this litigation.

Respectfully Submitted:

 /s/ Joseph J. Zito
Joseph J. Zito
DNL ZITO
1250 Connecticut Avenue, NW Suite 700
Washington, DC 20036
jzito@dnlzito.com
202-466-3500

Benjamin C. Deming
DNL ZITO
3232 McKinney Ave., Suite 500
Dallas, Texas 75204
 (214) 799-1145

*Counsel for Plaintiff*
*Urban Aeronautics LLC*